IN THE UNITED STATES DISTRICT COURT
FOR NORTHERN DISTRICT OF WEST VIRGINIA


CLARENCE McCALLUM,

      Petitioner,

v.                                                    Civil Action No. 1:04cv142


EDWARD F. REILLEY, JR.
CRANSTON J. MITCHELL;
JOHN SIMPSON; and
BRIAN BLEDSOE,

      Respondents.


<u>ORDER ADOPTING REPORT AND RECOMMENDATION</u>

Before the Court is the Report and Recommendation ("R&R") of United States Magistrate Judge John S. Kaull (dkt no. 32), dated July 27, 2007, and the respondents' objections to that R&R (dkt no. 33). For the following reasons, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation, **GRANTS-IN-PART** the petition under 28 U.S.C. § 2241 and **REMANDS** the petitioner's parole revocation matter to the United States Parole Commission for further proceedings consistent with the Court's rulings.

### I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A. McCallum's Petition**

On June 29, 2004, the petitioner, Clarence McCallum ("McCallum"), filed a Petition for Writ of Habeas Corpus by a

## ORDER ADOPTING REPORT AND RECOMMENDATION

Person in Custody pursuant to 28 U.S.C. § 2241[1]. In that petition, McCallam challenged the United States Parole Commission's ("the Commission") decision to revoke his parole.

On July 26, 1983, the Superior Count for the District of Columbia sentenced McCallum to six to eighteen years of incarceration for the offense of rape while armed, two to six years of incarceration for the offense of robbery and three to ten years for assault with intent to commit rape. All three sentences were to be served consecutively. On November 1, 1993, McCallum was paroled to a Maryland detainer for a robbery and kidnapping charge. In the spring of 2002, he was paroled on the Maryland charges, and his parole supervision was transferred to Washington, D.C.

According to McCallum, on August 16, 2002, he was walking on Martin Luther King, Jr. Avenue in Washington, D.C., at approximately 11:30 p.m., when a woman, who was walking in front of him, turned and attacked him. The woman claimed that McCallum had been "shadowing" her, had stolen her cell phone, and had assaulted her. As a result of this incident, the District of Columbia

---

[1]  District of Columbia prisoners are entitled to habeas corpus relief under 28 U.S.C. § 2241 if they establish that their custody is in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3). In point of fact, a § 2241 habeas petition is generally the proper method for obtaining judicial review of parole decisions. Smith v. United States, 618 F.2d 507 (8th Cir. 1980); Izsak v. Sigler, 604 F.2d 1205 (9th Cir. 1979).

Metropolitan Police arrested McCallum and charged him with one count of robbery and one count of threats. These charges were later dismissed for failure to prosecute because the complainant, Mona Davis ("Davis"), failed to appear in Court to pursue her criminal complaint.

At the time of the incident, McCallum had been on parole for three months. On August 21, 2002, the Commission issued a warrant for his arrest and found probable cause to hold him for a parole revocation hearing. After conducting three revocation hearings and performing its post-hearing review, the Commission revoked McCallum's parole, departed above the applicable guideline range of 12 to 16 months, and imposed a revocation sentence of 120 months of imprisonment.

In his § 2241 petition, McCallum alleges that the Commission violated his constitutional rights by:

(1) relying on the hearsay testimony of Mona Davis without having good cause to excuse her absence at his three revocation hearings;

(2) reversing three credibility determinations made by its hearing examiners without being present for the witnesses' live testimony;

(3)  having insufficient evidence to substantiate its finding of a parole violation; and

(4)  departing above the guideline range and imposing a sentence of 120 months of incarceration.  Based on these alleged constitutional violations, McCallum sought an order from this Court directing the Commission to immediately release him from federal custody and terminate the parole revocation hearing against him.

**B. Procedural History**

On November 18, 2004, Magistrate Judge Kaull conducted a preliminary review of this case and determined that summary dismissal was not appropriate. He, therefore, directed the respondents to show cause why McCallum's § 2241 petition should not be granted. After being granted an extension of time, the respondents responded to McCallum's petition on January 26, 2005. McCallum replied on February 28, 2005, and the respondents filed a surreply on March 23, 2005.

In reviewing the pleadings, Magistrate Judge Kaull determined that the Court needed additional information to resolve the issues raised in McCallum's petition.  On August 18, 2006, therefore, he directed the respondents to file copies of the tapes or transcripts, whichever was available, of each of McCallum's parole revocation hearings.  On September 18, 2006, the Court received a

4

probable cause hearing digest, dated September 6, 2002, and three tapes of McCallum's parole revocation hearings from the Commission.

On July 27, 2007, Magistrate Judge Kaull entered his R&R, which recommended that McCallum's petition be granted-in-part and that his revocation matter be remanded to the Commission for further proceedings.  The respondents filed timely objections to this report and recommendation on August 9, 2007.

## II. MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Magistrate Judge Kaull's R&R summarizes in detail the evidence introduced at McCallum's three revocation hearings, as well as describes the actions taken by the Commission during its post-hearing review.  Based on a careful review of the evidence introduced at the revocation hearings, he concluded that the Commission had violated McCallum's right to confrontation under Morrissey v. Brewer, 408 U.S. 471, 480 (1972)(recognizing a limited right to confrontation in parole hearings).  Specifically, he found that the hearsay testimony of Davis on which the Commission relied was significant because it was the only testimony, other than that of McCallum, to establish how the altercation began and what transpired during the entire altercation.

Although detailed police reports generally have a "sufficient indica of reliability," Magistrate Judge Kaull questioned the

reliability of the hearsay testimony and noted the inconsistencies between statements Davis gave to the police as set forth in the police report and statements she made during a 911 call reporting the incident. At the revocation hearings, moreover, witnesses testified that Davis' cell phone fell to the ground during the altercation and that McCallum retrieved the phone from the ground and gave it to a witness to be returned to Davis. Because he determined that hearsay testimony had been important to the outcome of the revocation matter and lacked reliability, Magistrate Judge Kaull concluded that McCallum had a significant interest in confrontation.

With respect to the Commission's reason for not providing McCallum with the opportunity to confront Davis, Magistrate Judge Kaull found that the Commission had been informed by third parties that Davis was afraid to testify because her mother had been killed many years before to prevent her testimony in an unrelated case. Noting that the Commission had not determined whether the prior incident actually had occurred, or how many years ago it allegedly occurred, or specifically how it had colored Davis' perception about testifying against McCallum, Magistrate Judge Kaull found that the Commission had failed to confirm the fact of Davis' fear, or whether her fear, if any, was reasonable. Accordingly, he

6

ORDER ADOPTING REPORT AND RECOMMENDATION

concluded that McCallum's interest in confrontation significantly outweighed the Commission's interest in denying McCallum the right to confront Davis.

Magistrate Judge Kaull also concluded that the Commission had failed to follow its own regulations and procedures in reaching its final decision to revoke McCallum's parole. He found that, after the second revocation hearing, a panel recommendation of two concurring examiner opinions existed, and, therefore, the matter should not have been referred to Case Operations Administrator Stephen Husk ("Husk") for an additional review. Importantly, it was Husk's recommendation that the Commission adopted.

Magistrate Judge Kaull further found that, following McCallum's third revocation hearing, Husk independently reviewed the revocation matter and offered an opinion that, ultimately, became the final decision of the Commission. Once again, Husk offered his opinion after a panel recommendation had been reached by the hearing examiners. It was important to Magistrate Judge Kaull's analysis that Husk had offered an opinion after the panel recommendation had been adopted by a Regional Commissioner and, that after reviewing Husk's opinions, the Regional Commissioner had changed his recommendation. Based on these facts, Magistrate Judge Kaull concluded that Husk's actions in providing opinions after the

**ORDER ADOPTING REPORT AND RECOMMENDATION**

second and third revocation hearings were inconsistent with the applicable regulations, and that his unauthorized involvement had tainted McCallum's revocation hearings with an appearance of impropriety.

Based on his conclusions that McCallum's constitutional rights had been violated, Magistrate Judge Kaull recommended that McCallum's §2241 petition be granted-in-part and that his parole revocation matter be remanded to the Commission for further proceedings.

## III.  ANALYSIS

Following a magistrate judge's report and recommendation concerning a petition, the district court will review <u>de novo</u> any portions of the report and recommendation to which a specific objection is made, 28 U.S.C. § 636(b)(1), and may adopt, without explanation, any of the magistrate judge's recommendations to which a party does not object.  <u>Camby v. Davis</u>, 718 F.2d 198, 199 (4th Cir. 1983).  The respondents objected to Magistrate Judge Kaull's findings that the Commission violated its rules and regulations in reaching the final decision to revoke McCallum's parole, and that the Commission had denied McCallum's right to confrontation by relying on hearsay of the complainant without good cause for her

absence from the revocation hearings.  The Court will address these objections in turn.

## A. Violation of Due Process Rights- Failure to Follow the Applicable Regulations

The respondents contend that the administrative record does not establish that the Commission violated its regulations in the post-hearing voting process.  Specifically, they assert that Husk's review of the hearing examiners' recommendations after McCallum's second and third revocation hearings did not violate the applicable regulations and was not for an improper purpose.  To properly address this objection, the Court must first review the regulations applicable to McCallum's parole revocation matter, and then analyze the actions taken by Husk after McCallum's second and third revocation hearings.

A.

28 C.F.R. § 2.23 (2003) authorizes hearing examiners to conduct hearings and make recommendations relative to the revocation or reinstatement of parole.  Subsection (b) of § 2.23 requires the concurrence of two hearing examiners or of a hearing examiner and the executive hearing examiner to obtain a panel recommendation.  Significantly, a panel recommendation is required in each case decided by a Regional Commissioner after a hearing is held.  28 C.F.R. § 2.23(b)(2003).

"In the event of divergent votes, the case shall be referred to another hearing examiner (or to the Executive Hearing Examiner in the case of a hearing conducted by a panel of examiners) for another vote." 28 C.F.R. § 2.23(c)(2003). "If concurring votes do not result from such a referral, the case shall be referred to any available hearing examiner until a panel recommendation is obtained." <u>Id.</u>

Pursuant to 28 C.F.R. § 2.24(a)(2003), the Regional Commissioner may review the panel recommendation and refer this recommendation with his recommendation and vote to the National Commissioners for consideration. Notwithstanding a panel recommendation, a Regional Commissioner may return the case for a rehearing or he can designate the case for original jurisdiction of the Commission where he can obtain a majority vote from all the Commissioners. 28 U.S.C. § 2.24(b)(2003).

Decisions to revoke parole must be made upon the concurrence of two Commissioner votes, except that a decision to override an examiner panel recommendation requires the concurrence of three Commissioner votes. 28 C.F.R. § 2.105(c)(2003).

B.

Following McCallum's second revocation hearing, hearing examiner Otis Thomas ("Thomas") recommended that no finding be made

on the robbery or the assault charges and that McCallum's parole be reinstated.  In accordance with the regulations, Administrative Reviewer Henry Grinner ("Grinner") reviewed the matter and also recommended that the Commission make no finding on the charges of robbery or assault and that McCallum be reinstated to parole.

In their objections, the respondents, for the first time, bring to the Court's attention the fact that Thomas had recommended that an additional revocation hearing be held following McCallum's reinstatement on parole.  Grinner, however, had recommended that McCallum be reinstated to parole without a subsequent hearing. Therefore, because of the split between the recommendations of Thomas and Grinner as to whether an additional revocation hearing should be conducted, Husk acted as a third examiner and recommended that the Commission rehear the case, but that McCallum remain incarcerated on the violations until the third hearing. Ultimately, on June 19, 2003, the Commission issued a notice of action that was consistent with Husk's recommendation.  Based on these facts, the respondents assert that Husk's review of Thomas and Grinner's recommendations was in accordance with 28 C.F.R. 2.23(c) because a two-vote concurrence had not been reached by the prior examiners.

ORDER ADOPTING REPORT AND RECOMMENDATION

Even when considering this new evidence, the conclusion is inescapable that the Commission violated applicable regulations following McCallum's second revocation hearing. Husk clearly did not fully concur with either of the prior examiners when he recommended that McCallum be held in custody until the third revocation hearing, since neither prior examiner had recommended that McCallum remain in custody regardless of whether a third hearing was held on his revocation matter.

28 C.F.R. 2.23(c) requires that, if concurring votes do not result from the referral to a third examiner, the case must be referred to any available hearing examiner until a panel recommendation is obtained (i.e.- two concurring votes). Significantly, a panel recommendation is required in each case decided by a Regional Commissioner after a hearing is held. 28 C.F.R. 2.23(b). The respondents, however, fail to provide any additional documentation that establishes that a panel recommendation actually was reached prior to the adoption of Husk's recommendation by the Commission. Therefore, the administrative record before the Court supports the conclusion of Magistrate Judge Kaull that the Commission violated the applicable revocation regulations in its post-hearing voting process following McCallum's second revocation hearing.

12

C.

Following McCallum's third revocation hearing, hearing examiner Charles Lyons ("Lyons") recommended that, based on insufficient evidence, the Commission withdraw the warrant and reinstate McCallum to supervision. In accordance with the regulations, Grinner again reviewed the matter and also recommended that McCallum's supervision be reinstated. In their objections, however, the respondents, again for the first time, assert that Grinner completed an "Addendum to Hearing Summary for Case," in which he explained to Husk that he saw no alternative but to agree with Lyon's recommendation. Grinner specifically states, "I wanted you [Husk] to give the case another review - Just in case."

Because Grinner officially concurred with Lyon's recommendation, the applicable regulations do not require additional review by a third examiner. 28 C.F.R. § 2.23. Therefore, the panel recommendation was appropriately sent to Vice Chairman Cranston J. Mitchell ("Mitchell") who, on August 4, 2003, concurred with the panel's recommendation and, initially, signed and dated an Order finding no violation of McCallum's parole. According to the respondents, however, in light of Grinner's written comments in the addendum, Mitchell subsequently requested that Husk review the tapes of McCallum's revocation hearings.

ORDER ADOPTING REPORT AND RECOMMENDATION

On August 14, 2003, Husk prepared a detailed written memorandum for Mitchell evaluating the evidence presented at McCallum's revocation hearings and providing his opinions as to whether "good cause" existed to excuse the adverse witness from testifying.  He also evaluated whether the evidence in the record was sufficient to support a parole revocation.  After reviewing Husk's memorandum, Mitchell changed his vote and recommended that McCallum's parole be revoked.  Significantly, Mitchell expressly concurred with Husk's recommendations.

The respondents contend that Husk's memorandum did not violate the applicable regulations because Husk did not vote as a third examiner in McCallum's case.  They emphasize the fact that, in his written memorandum to Mitchell, Husk noted that Grinner had concurred with Lyons and, therefore, he could not vote on McCallum's revocation.  The respondents characterize Husk's memorandum as "advice" requested by a Commissioner, and contend that such advice is often requested from other federal entities and officials concerning matters within the Commission's jurisdiction.

A careful analysis of these circumstances, however, establishes that Husk independently reviewed the tapes of McCallum's revocation hearings and provided detailed written opinions on the ultimate issues in the matter that were included in

<u>ORDER ADOPTING REPORT AND RECOMMENDATION</u>

McCallum's revocation file. Husk's actions in this regard were identical to the actions that he would have taken had there been divergent votes by the prior examiners. In this Court's view, therefore, Husk's memorandum, at best, was an unofficial vote going well beyond the type of advice routinely obtained from other federal agencies. Moreover, Husk's knowledge that the regulations prohibited him from voting as a third examiner raises a question about his motives and the impartiality of the opinions he provided to the Regional Commissioner.

That Mitchell adopted Husk's unofficial vote when he reconsidered his decision is also problematic given that the regulations do not provide for any additional review when a panel recommendation, consisting of two concurring votes, has been submitted to a Regional Commissioner. 28 C.F.R. § 2.23(c); 28 U.S.C. § 2.24(b). If Mitchell did not agree with, or was unsure of, the panel's recommendation, the regulations provide options for him to obtain additional information, such as holding a rehearing or seeking a full vote of the Commission. No regulation authorizes the kind of evaluation Husk undertook in the post-hearing process, and Husk's opinions should not have been considered by the

subsequent Commissioners[2] who voted on McCallum's revocation matter. Simply put, the unauthorized opinions Husk provided for review by the Commissioners tainted the post-hearing process. The Court, therefore, concludes that the Commission failed to follow applicable regulations in conducting its post-hearing vote process and, consequently, violated McCallum's procedural due process rights.

**B.  Violation of McCallum's Confrontation Rights- Reliance on Hearsay Testimony**

With respect to the alleged violation of McCallum's confrontation rights, the respondents assert that, even if the Court were to find that good cause did not exist to excuse the attendance of Davis as an adverse witness at McCallum's three revocation hearings, her hearsay statements contained in the police report were sufficiently reliable to satisfy due process requirements. <u>Crawford v. Jackson</u>, 323 F.3d 123, 128 (D.C.Cir. 2003)(finding that a detailed police report providing a "fairly full account of the circumstances" had an "indicia of reliability"

---

[2] In his R&R, Magistrate Judge Kaull concluded that Mitchell did not refer McCallum's matter to another Commissioner for an additional vote. Under the current Guidelines, a Regional Commissioner may make the final revocation decision if he concurs with the panel recommendation. 28 U.S.C. § 2.24(a)(2006). However, in 2003, two Commissioners had to concur to revoke a defendant's parole. 28 U.S.C. § 2.105(c) (2003). In their objections, the respondents, for the first time, produce evidence to establish that a second Commissioner, John R. Simpson, voted to revoke McCallum's parole. Simpson's vote, however, came after Husk's unauthorized evaluation had tainted the post-hearing process.

**ORDER ADOPTING REPORT AND RECOMMENDATION**

and did not violate the defendant's fundamental due process rights). In their objection, the respondents simply reassert the arguments they presented to Magistrate Judge Kaull and contend that his legal conclusions concerning the violation of McCallum's right to confrontation were erroneous.

The seminal case of <u>Morrissey v. Brewer</u>, 408 U.S. 471, 480 (1972), established that revocation hearings are not criminal prosecutions, and, therefore, a defendant is not entitled to the "full panoply of rights due a defendant" in criminal proceedings. <u>Morrissey</u> states that the parole revocation process "should be flexible enough to consider evidence including letters, affidavits, and other materials that would not be admissible in an adversary criminal trial." <u>Id.</u> at 489. <u>Morrissey</u>, however, also held that the minimum requirements of due process for parole revocation hearings include "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation). <u>Id.</u> at 488-89.

Admittedly, the right to confront an adverse witness clearly is not absolute in parole revocation proceedings. <u>Ash v. Reilly</u>, 431 F.3d 826, 830-31 (D.C.Cir. 2005)(explaining that <u>Crawford v. Washington</u>, 541 U.S. 36 (2004) does not apply to parole revocation hearings); <u>see</u> <u>also</u> <u>United States v. Kelley</u>, 446 F.3d 688, 691-92

(7th Cir. 2006); United States v. Kirby, 418 F.3d 621, 627-28 (6th Cir. 2005); United States v. Aspinall, 389 F.3d 332, 342-43 (2d Cir. 2004); United States v. Martin, 382 F.3d 840, 844 (8th Cir. 2004). The inability to confront an adverse witness at a parole revocation hearing reaches a constitutional dimension only upon a showing of resulting prejudice. Ash v. Reilly, 431 F.3d at 830. Prejudice is determined by examining the "quality and quantity of nonhearsay and reliable hearsay evidence supporting the decision to revoke parole." Id.; United States v. Comito, 177 F.3d 1166 (9th Cir. 1999). Morrissey requires the trial court in a revocation proceeding to balance the defendant's rights to confront a witness against the grounds asserted by the Commission for not allowing confrontation. United States v. Zentgraf, 20 F.3d 906, 908-10 (8th Cir. 1994); United States v. Frazier, 26 F.3d 110, 114 (11th Cir. 1994).

Here, McCallum never disputed that he was involved in an altercation with Davis on August 16, 2002. Rather, he consistently asserted that his only involvement in the incident was to defend himself, and that Davis initiated the altercation by swinging her cell phone at him. At the second revocation hearing, McCallum testified that he only took action to control the situation and to defend himself when Davis wrestled him to the ground.

18

ORDER ADOPTING REPORT AND RECOMMENDATION

The police report, on the other hand, states that Davis, who believed McCallum was "shadowing" her, felt threatened. According to Davis' statement to the police, McCallum grabbed her neck, threatened her, wrestled her to the ground and took her cell phone. The key factual issue raised in McCallum's revocation matter, thus, was whether McCallum or Davis was the initial aggressor in the altercation. Because Davis' statement in the police report was the only evidence of record of her version of the altercation, it clearly was significant to the outcome of McCallum's revocation matter.

Moreover, because McCallum and Davis' versions of the altercation differed in critical respects, the Commission necessarily had to weigh the credibility of each of them in order to decide the matter. Despite the fact that Davis' credibility was a significant issue, McCallum never had the opportunity to cross-examine her about her version of the offense. Specifically, he was unable to delve into the inconsistencies between what she said during her 911 call and the statement she later gave to the police. Nor did he have the opportunity to explore the bases for her accusation that he had stolen her cell phone. In light of testimony from others that Davis had dropped her cell phone during the altercation, and that McCallum had retrieved the phone from the

ground to provide it to a witness so it could be returned to Davis, this was an important area of inquiry and opportunity for impeachment. McCallum, therefore, was clearly prejudiced by his inability to cross-examine Davis during his revocation proceedings.

The respondents nevertheless contend that the hearsay statement was reliable because it is part of a detailed police report that contains certain key facts concerning the altercation. Those key facts include McCallum's identity, that McCallum had been walking behind Davis, and that the altercation in fact occurred. McCallum, however, never disputed any of these facts, and the undisputed facts in the police report do nothing to assist the trier-of-fact in establishing that McCallum was the aggressor in the altercation.

Furthermore, the allegedly detailed police report fails to provide several additional undisputed details concerning the incident that should have raised doubt about the truthfulness of Davis' hearsay statement that McCallum was the aggressor. Specifically, at McCallum's second revocation hearing, Detective Vincent Tucci ("Detective Tucci"), who drafted the police report, testified that Davis was wearing a white uniform shirt that only appeared mussed, and that Davis had no visible injuries following the altercation. A witness named James Chapman (aka "Uncle Pete"),

who had known Davis for approximately three to five years prior to the incident, also testified that Davis did not look like she had been in a scuffle because her white shirt was not dirty and she did not have any bruises or injuries.  The police report, however, provides no description of Davis' appearance following the altercation and does not indicate whether she had any visible injuries.

In addition, despite Davis' allegations that McCallum stole her cell phone, Detective Tucci testified that, when he arrived at the scene of the incident, Davis had her cell phone in her hand. Similarly, Michael Baylor ("Baylor"), a witness identified by the Commission immediately prior to the third revocation hearing, testified that, at the request of Uncle Pete, McCallum retrieved the cell phone from the ground so that it could be returned to Davis.[3]  Significantly, Uncle Pete's testimony during the second revocation hearing was consistent with Baylor's testimony, because Uncle Pete stated that he could not understand why Davis wanted to

---

[3]  The respondents argue that Baylor's testimony corroborates Davis' description of the altercation.  However, as recognized by the Magistrate Judge, Baylor did not witness the beginning of the altercation, and his testimony concerning what he witnessed could be consistent with McCallum's testimony that he defended himself and tried to gain control of Davis after she attacked him. Furthermore, it is significant that the hearing examiner who was present for Baylor's testimony totally disregarded his testimony as lacking credibility. Moreover, Baylor did not provide a statement to the police at the scene of the incident and, at the revocation hearing, stated that he could not recall the incident "word for word" because it "happened so long ago."

call the police to report a robbery when McCallum "just gave it [Davis' cell phone]" to him.

The only information in the police report concerning Davis' cell phone states that she attempted to use her cell phone to call the police, that McCallum threatened to snap her neck if she did not give him the phone and that a witness was able to take the phone from McCallum. The police report does not provide the names of witnesses and does not indicate whether the police attempted to interview Uncle Pete or Michael Baylor immediately following the incident.

At the second revocation hearing, Detective Tucci also testified that McCallum asked the police to press charges against Davis for attacking him. Moreover, Lieutenant Robert Conte ("Conte") testified that McCallum saw him drive by on his way to the scene, but did not run. According to Conte, McCallum was calmly walking down a street a couple of blocks away from the scene of the incident when the police arrived and appeared not to understand why he was being arrested. This information, however, is also not included in the police report prepared by Tucci and no additional reports were produced by Conte concerning the incident.

Finally and critically, the reliability of the summary of Davis' statements contained in the police report is undermined in

**ORDER ADOPTING REPORT AND RECOMMENDATION**

a most damaging respect by Davis' own statements to the 911 operator. Immediately following the alleged assault by McCallum, Davis called 911 to report the incident and stated:

> Yeah, this is Ms. Davis. He didn't even get to do it because I wrestled him down. I wrestled him down. I'm a security guard for one, he was walking behind me the whole time, right, I knew something was wrong because he was just a little too close too f***ing close to me, and he was trying to come up behind to me to catch me off guard and come up and grab me from behind. But I turned around fast, and I swung at him, and I caught him off guard.

These statements directly contradict the statements Davis later gave to the police.

Weighing the totality of the evidence presented to the Commission compels this Court to conclude that the hearsay testimony of Davis does not have a "sufficient indicia of reliability" to permit its use and consideration in lieu of confrontation. Magistrate Judge Kaull, therefore, correctly determined that McCallum's significant interest in confrontation outweighs the Commission's interest in not allowing confrontation. The record lacks any reliable evidence that Davis had a reasonable fear of testifying against McCallum at his parole hearing and also raises considerable doubt about her credibility. Accordingly, the Court concurs with the Magistrate Judge's conclusion in his Report

and Recommendation that McCallum's right to confrontation was violated.[4]

### IV. CONCLUSION

For the reasons stated, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation, **OVERRULES** the respondent's objections, **GRANTS-IN-PART** McCallum's § 2241 petition, and **REMANDS** McCallum's revocation matter to the United States Parole Commission for further proceedings consistent with this Order.

It is so **ORDERED.**

The Clerk is directed to provide a copy of this Order to counsel of record.

Dated: August 24, 2007.


/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE

---

[4] Because it has found constitutional violations in the procedure followed in McCallum's revocation hearings, the Court does not need to address the substantive issues raised in his petition. Those issues are better suited for consideration by the Commission upon remand of McCallum's revocation matter.